**Daniel V. HELSEL, Appellant,**

v.

**Robert P. PURICELLI and Denise L. Puricelli, Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 28, 2007.
Filed May 21, 2007.
Reargument Denied July 30, 2007.

Timothy S. Burns, Ebensburt, for appellant.

Andrew D. Gleason, Johnstown, for appellees.

BEFORE: MUSMANNO, BOWES and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Daniel V. Helsel ("Grandfather") appeals the trial court's Order finding that he did not have standing to seek visitation with his grandchild. Grandfather argues that the trial court erred when it found a

section of the Custody and Grandparent's Visitation Act ("GVA"), 23 Pa.C.S. section 5301 *et seq.*, did not confer standing upon him because the mother and father of the child ("Mother" and "Father") were separated for a period of more than six months. After careful review and study, we find that the trial court correctly interpreted the relevant statutory language. Consequently, we affirm the trial court's Order.

¶ 2 Grandfather, who is actually grandchild's step-grandfather, filed a complaint for visitation on January 13, 2006, seeking visitation with grandchild. Grandchild's parents separated in May of 2004, however, they reconciled in May of 2005. Grandfather, apparently, was unaware that grandchild's parents had reconciled.

¶ 3 Following a pre-hearing custody conference, the Master issued a decision dismissing Grandfather's claim on the grounds that he lacked standing because Mother and Father were living together as an intact family. Grandfather filed timely exceptions, alleging that, *inter alia*, the grandchild's parents were not living together. The trial court remanded the matter to the Master for a determination of whether Mother and Father were living together and the state of their relationship.

¶ 4 The Master held a hearing on July 10, 2006. At that hearing, the Master heard testimony from Mother, Father, and Grandfather. During that hearing, Mother testified, *inter alia*, that she has negative feelings toward Grandfather. Following the hearing, the Master found that although Mother and Father had separated, they had reconciled, the divorce action had been terminated and the family was living as an intact family unit. The Master further found that because the parents had reconciled, Grandfather was without standing to seek visitation. Grandfather filed exceptions, which the trial court denied.

¶ 5 The trial court issued its opinion on August 29, 2006. In that Opinion, the Honorable F. Joseph Leahey agreed with the Master's report and recommendation and dismissed Grandfather's complaint for visitation because he did not have standing. Grandfather filed a timely notice of appeal and a timely Rule 1925(b) Concise Statement of Matters Complained of on appeal. In support of his appeal, Grandfather presents the following question for our review:

I. Whether the Trial Court was in error in denying the Appellant's Exceptions from the Master's Report finding that he did not have standing to pursue visitation with his grandchild pursuant to 23 Pa.C.S.A. § 5312 of the Grandparent's Visitation Act?

Brief for Appellant at 5.

¶ 6 The question of whether a grandparent has standing to seek visitation rights in a case where the grandchild's parents had previously separated for a period of more than six months, but were reconciled at the time the grandparent sought visitation rights pursuant to the GVA, is an issue of first impression for this Court.

¶ 7 Preliminarily, we note that on questions relating to an order of custody or visitation, our scope and standard of review are broad:

the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's

incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion. *Liebner v. Simcox*, 834 A.2d 606, 609 (Pa.Super.2003) (citation omitted).

¶ 8 The language of GVA section at issue in this case is section 5312. That section is entitled "When parents' marriage is dissolved or parents are separated" and states as follows:

> In all proceedings for dissolution, subsequent to the commencement of the proceeding and continuing thereafter or when parents have been separated for six months or more, the court may, upon application of the parent or grandparent of a party, grant reasonable partial custody or visitation rights, or both, to the unmarried child if it finds that visitation rights or partial custody, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.

23 Pa.C.S. § 5312. In support of his appeal, Grandfather argues that the language of section 5312 of the GVA's separation requirement does not require that the parents remain separated or are separated at the time the grandparent seeks visitation rights. Brief for Appellant at 11. Specifically, Grandfather argues that the trial court erred when it found he did not have standing to pursue the right to visitation with his grandchild because although her parents were not separated at the time he sought visitation rights, they had been separated for a period of more than six months in the past. Brief for Appellant at 11. Grandfather advocates a plain meaning interpretation of the language in the GVA in support of his position and provides citations to case law which discusses the importance of a child's relationship with his or her grandparents.

¶ 9 When interpreting the language of a statute, we construe the language according to the plain meaning of the language. *See Malone v. Stonerook*, 843 A.2d 1278, 1280 (Pa.Super.2004). "[W]ords and phrases contained in a statute shall be construed according to rules of grammar and according to their common and approved usage." *Id.* (citation omitted). Grandfather argues that the use of the term "have been" in relation to the parents' separation references the past, and thus, the statute only requires that parents were separated for six months in the past and does not require that parents remain separated when the petition is filed. Brief for Appellant at 11. Although Grandfather is correct in that the statute does look to the past, the term upon which he relies, "have been," is a present perfect continuous form—which is used when a party references something that began in the past and continues to the present. HOWARD H. DUNBAR ET AL., WRITING GOOD ENGLISH 155–56 (1951). Thus, under a plain meaning reading of the statute, which is advocated by Grandfather, the GVA only applies where parents separated at least six months before the filing of the custody petition and *remain separated at the time the petition is filed*.

¶ 10 Although Grandfather has cited case law discussing the importance of a grandparent in the life of a child, this Court will not direct the parents, who are living together as an intact family, to allow visitation when they otherwise would not choose to do so. *See Herron v. Seizak*, 321 Pa.Super. 466, 468 A.2d 803, 805 (1983). *Herron v. Seizak*, wherein the grandparents sought visitation with their grandchildren despite the fact that they were part

of an intact family, is instructive in this case. In *Herron,* this Court interpreted the GVA and found that a grandparent will have standing in one of three situations "(1) when a parent is deceased; (2) when parents' marriage is dissolved; and (3) when the child has resided with grandparents for a period of 12 months or more." *Id.* at 805. This Court further noted that although it was unfortunate that the grandparents and grandchild were unable to have a relationship, we refused to "legitimize[ ] such an intrusion by the courts into family life." *Id.* This is particularly true in the instant case, where Mother has very strong negative feelings toward Grandfather. Notes of Testimony ("N.T."), 07/10/06, at 5 (Mother testified that she "despised" Grandfather).

¶ 11 Finally, Grandfather's expansive interpretation of the GVA does not comport with the title of the relevant statute, which is clearly and unambiguously titled "When parents' marriage is dissolved or *parents are separated.*" 23 Pa.C.S. § 5312 (emphasis added). The title of the relevant portion of the GVA clearly states that it applies when a child's parents are separated. *See Commonwealth v. Barnhart,* 722 A.2d 1093, 1095 (Pa.Super.1998) (looking at language in title of statute when interpreting the statute).

¶ 12 We also note that even if we found the trial court erred in its interpretation of the relevant language of the GVA, we would affirm the decision on the grounds that the fact that Grandfather is child's step-grandfather, and not a blood relative of grandchild, Mother or Father; thus, Grandfather does not have standing. *See Hill v. Divecchio,* 425 Pa.Super. 355, 625 A.2d 642, 648 (1993) (finding that step-grandfather must be dismissed from suit because "the unambiguous words of the statute which state 'upon application of the parent or grandparent of a party' preclude the mother's step-father, the child's step-grandfather, from asserting a cause of action.")

¶ 13 To the extent that Grandfather argues that this Court should abandon the standing requirement, and instead look at whether the best interests of the grandchild require that he be allowed to continue to seek visitation with his grandchild, we note that the "best interests" issue is entirely absent from his Rule 1925(b) Statement, and as such, we find the issue waived and will not address it. We further note that the examination of the best interests of the child may occur only *after* the trial court has determined that a grandparent has standing. *See, e.g., Ken R. on Behalf of C.R. v. Arthur Z.,* 438 Pa.Super. 114, 651 A.2d 1119, 1121 (1994) (noting that although a sibling relationship is of utmost importance, appellant did not have standing to seek custody or visitation with her siblings because "a moral or a personal interest is not a legal interest."); *Welsh v. Welsh,* 21 Pa.D. & C.4th 246, 247–48 (Pa.Com.Pl.1993) (noting that the best interest of the child is the primary concern in a custody case and that "before that paramount concern is addressed, the grandparent must first establish that he or she has standing to seek the relief requested."). Simply stated, courts of this Commonwealth are not permitted to "overlook" or ignore the standing requirement. Finally, to the extent Grandfather argues that our Supreme Court in *Bishop v. Piller,* 536 Pa. 41, 637 A.2d 976 (1994) "in a sense ignored the standing requirements of section 5312," Brief for Appellant at 13, he misstates the facts of that case because it was clear that the grandparents in that case had standing because the child's parents never married and never cohabitated. *See Bishop,* 637 A.2d at 976.

¶ 14 For all the foregoing reasons,

¶ 15 Order **AFFIRMED.**